

Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5274

Writer's e-mail
jacohen@seyfarth.com

WASHINGTON, D.C. SYDNEY SHANGHAI SAN FRANCISCO SACRAMENTO NEW YORK MELBOURNE LOS ANGELES LONDON HOUSTON HONG KONG CHICAGO BOSTON ATLANTA

October 28, 2019

**VIA ECF**

Honorable Karen M. Williams
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Room 1050, Courtroom 5C
Camden, NJ 08101

**Re: *Mall Chevrolet, Inc. v. General Motors LLC,***
**Civil Action No. 1:18-cv-15077-JBS-KMW**

Dear Judge Williams:

We represent General Motors LLC ("GM") in this action. We write pursuant to Local Rule 37.1 and Rule 26(b)(2)(A) of the Federal Rules of Civil Procedure to request leave to take the third-party depositions of the corporate designees of CarMax, Carvana, and DriveTime before fact discovery closes on November 22. Carvana and CarMax have not objected to their depositions and have advised that they are available to be deposed on November 12 and 13, respectively. GM is still coordinating dates with DriveTime's counsel.

Mall Chevrolet, Inc. ("Mall") filed this case after GM issued a Notice of Termination of Mall's Dealer Sales and Service Agreement because Mall submitted false claims for payment to GM, including numerous claims for warranty repairs supposedly performed on vehicles owned by these third-party used car retailers. Discovery obtained in this action has confirmed Mall's widespread scheme to defraud GM. This scheme involved multiple employees of Mall, including one who invoked his Fifth Amendment right against self-incrimination during his deposition.

Many of the false warranty claims Mall submitted were for vehicles owned by CarMax, Carvana, and DriveTime. In response to GM's subpoenas, all three companies produced documents confirming that Mall submitted warranty repair reimbursement claims to GM for vehicles which they owned but never sent to Mall for service. In fact, many of the vehicles were not even in New Jersey at the time of the purported repairs for which Mall submitted warranty repair reimbursement claims.






CarMax and Carvana have provided affidavits confirming these facts. *See* Exhibits A and B.[1] Because these companies reside outside this Court's jurisdiction, GM intends to take short depositions of each company's corporate designee to preserve their testimony for use at trial.

Mall wants to block GM's efforts to secure this evidence. On October 23, 2019, Mall sent GM a letter demanding that GM withdraw its deposition subpoenas to CarMax and Carvana, claiming that they exceed the scope of discovery, are for an improper purpose, and would subject Mall to undue burden and expense. Without conferring with us, Mall's counsel contacted the third-party witnesses and their counsel and improperly instructed them not to respond to or comply with GM's subpoenas: "Please do not respond to or otherwise comply with the subpoena[s]" because "Mall intends to move to quash the Subpoena[s] and/or for a protective order prior to the date of compliance." *See* Exhibits C and D.[2] At GM's request, the parties met and conferred on this issue earlier today, but Mall refused to consent to GM's request.

Mall initially objects to GM's deposition subpoenas because they would result in GM taking 12 discovery depositions—two more than the 10 depositions allotted under Rule 30(a)(2)(A)(i) and this Court's Order for Scheduling Conference. (*See* Dkt. 2.) To date, GM has taken or noticed 9 depositions of Mall's present and former employees and corporate designee.[3] Each deposition addressed issues central to this case. In accordance with Rule 26(b)(2)(A), GM requests a modest and reasonable modification to the deposition allotment to take these two additional depositions for the express purpose of preserving critically important testimony from non-party witnesses.

Mall also objects to the subpoenas because, it claims, the New Jersey Franchise Practices Act (the "Act") requires a franchisor to state the "grounds" for termination in its notice and GM did not state that it received or relied upon documents from these entities in its Notice of Termination. Mall's position is factually and legally erroneous. As a matter of fact, GM put Mall on notice that Mall's submission of false warranty repair reimbursement claims, including for these three companies, were

---

[1] We have omitted the exhibits to both affidavits submitted by CarMax and Carvana from this filing and are sending them to the Court under separate cover because CarMax has designated its first exhibit as Confidential under the Discovery Confidentiality Order (Dkt. 15) and the data size of the exhibits is too large for the ECF docket.

[2] After we requested that Mall's counsel withdraw their demand to witnesses, they clarified that "we are only requesting that CarMax hold off on responding to or otherwise complying with the Subpoena until the date of compliance or as otherwise directed by the Court." See Exhibits E and F.

[3] GM has been quite judicious in its selection of witnesses for deposition. GM has deposed Mall's Dealer Principal (Charles Foulke III) and General Manager (Craig Colender) because they were directly involved in the GM warranty audit at issue. GM has also deposed Mall's former Service Manager who oversaw the service department during the relevant time period (Larry Pfeiffer), Mall's former Service Advisor who wrote most of the false repair orders (Ray Moffat), Mall's former technician who purportedly repaired the vehicles listed on the false repair orders (Craig Nicholson), and Mall's former warranty administrator who submitted many of the false claims (Betty Gray). GM has noticed the depositions of Mall's current and former dispatchers (John Niessen and Len Yackimowicz, respectively) who signed most of the false repair orders for authorization, along with Mall's Rule 30(b)(6) corporate designee.





the reason that GM issued the Notice of Termination. On May 16, 2017, following an onsite review of Mall's warranty claim submissions, GM advised Mall by letter that it will no longer be compensated for warranty or policy repairs performed for used vehicle companies CarMax, Carvana, and DriveTime without prior approval by GM due to "legitimate questions as to the circumstances of these repairs[.]" *See* Exhibit G.

Based upon the findings of the May 2017 review, GM conducted a further onsite audit and subsequent investigation of Mall's warranty claim documentation during 2017 and 2018. On May 3, 2018, GM sent Mall a Notice of Breach in which it advised Mall that "GM found submissions where the documents either did not support the warranty claim or actually reflected fraud." *See* Exhibit H at 2. GM attached a 94-page Debit Deviation Report which indicated that for 186 repairs subject to chargeback the "[v]ehicle presence [was] not substantiated." *See* Exhibits H and I. The Notice of Breach further stated that Mall's actions are "blatant violations of at least two provisions of Mall's Dealer Agreement" including its agreement to submit true and accurate claims for payment and the prohibition against the "[s]ubmission by [Mall] of false applications or claims for any payment, credit, discount, or allowance . . . ." Exhibit H at 2-3.

After Mall failed to offer any explanation (or even acknowledge) its misconduct, GM issued the Notice of Termination on July 31, 2018. *See* Exhibit J at 1. In GM's Notice of Termination, GM repeatedly informed Mall of its "fraudulent conduct and fraudulent warranty claim submissions" and incorporated its Notice of Breach, stating that the notice "described, in detail, the grounds for GM's notice." *See id.* at 3. The Notice of Termination attached a Revised Debit Deviation Report that included the fraudulent claims submitted for vehicles owned by CarMax, Carvana and DriveTime. Against this backdrop, Mall's feigned "lack of notice" on this issue is incredible.

As a matter of law, Mall's interpretation of the Act is just plain wrong. While the Act limits GM to "the grounds for termination set forth in the written notice," N.J.S.A. § 56:10-30(c), both the Notice of Breach and Notice of Termination describe and specifically cite the Dealer Agreement's prohibition against submitting false claims for payment and Mall's submission of false warranty claims to GM. Nothing in this statute prohibits GM from marshalling evidence during discovery to corroborate the stated grounds for termination—especially when the grounds for termination are fraud. Despite all the evidence demonstrating that Mall committed fraud, one of Mall's defenses appears to be that no fraud actually occurred. Third-party testimony from CarMax and Carvana will conclusively rebut that defense.

Putting aside Mall's erroneous interpretation of N.J.S.A. § 56:10-30(c), the testimony from CarMax and Carvana is most certainly relevant and admissible to support GM's defenses to Mall's non-termination claims. Indeed, in Counts IV and V of its Complaint, Mall asserted claims that GM unlawfully charged Mall back (or refused to pay) Mall for legitimate warranty repairs. Testimony from CarMax and Carvana will refute Mall's claims and help show that GM acted within its contractual and statutory rights to chargeback warranty claim payments for vehicles that Mall never serviced. For this additional reason, GM is entitled to discover facts regarding that undercut the veracity of the claims in Counts IV and V of Mall's Complaint.

Mall's objections to GM's legitimate discovery efforts are meritless. Mall is simply trying to block GM's ability to obtain evidence that Mall committed fraud. This Court should overrule Mall's






objections and grant GM leave to take these additional depositions, bringing GM's total deposition count to 12. If Mall wishes to challenge the admissibility of this evidence, the appropriate time for such an objection is at trial.

Thank you for your consideration of this matter.

Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Jeremy A. Cohen*

Enclosures

cc: All counsel of record (via ECF)