## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MALL CHEVROLET, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS LLC | : | NO. 18-15077-JRP-KMW |

## MEMORANDUM

**Padova, J.**                                                                                    **June 23, 2021**

Plaintiff franchisee Mall Chevrolet, Inc. ("Mall") commenced this action against Defendant franchisor General Motors LLC ("GM") in October of 2018, after GM sought to recover over $650,000 in payments made to Mall on warranty repair claims and then served Mall with a notice that it was terminating Mall's automobile franchise.  On February 8, 2021, we granted summary judgment in GM's favor on all Counts of Mall's Complaint except for Count V, which asserts a claim for unlawful chargebacks pursuant to § 56:10-15(f) of the New Jersey Franchise Protection Act ("NJFPA").  N.J. Stat. Ann. § 56:10-15(f).  GM now moves for summary judgment in its favor on Count V, arguing that § 56:10-9 of the NJFPA provides a complete legal defense to that claim.  For the following reasons, we grant GM's Motion and enter judgment in its favor on Count V.  Moreover, because we have already entered judgment in GM's favor on Mall's remaining claims, we enter final judgment in GM's favor and close the case.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Mall is an authorized dealer of GM's Chevrolet vehicles.  (Concise Statement of Stipulated Facts ("Stip. Facts."), ECF No. 75-2, ¶¶ 1-2.)  The relationship between Mall and GM is governed by a Dealer Sales and Service Agreement, its addenda, and its Standard Provisions (collectively, the "Dealer Agreement").  (Id. ¶ 3; see also Dealer Agrmt., Stip. Facts Ex. A.)  Under the Dealer Agreement, Mall agreed to perform warranty repairs on GM vehicles and to timely submit true and accurate claims for payments.  (Dealer Agrmt., Arts. 7.1.2, 11.2.)  GM agreed to reimburse

Mall for warranty repairs in accordance with GM's Service Policies and Procedures Manual (the "Service Manual"). (Id., Art. 7.1.4.) According to GM, the policies and procedures in the Service Manual "are designed to allow GM . . . to confirm . . . that the customer authorized the repair work, that the work was actually done, and that the repair was performed correctly." (Stip. Facts Ex. L at 2 of 99.)

"In May 2017, GM conducted a regional review of warranty reimbursement claims which Mall had submitted to GM and which GM had paid." (Stip. Facts ¶ 15.) Following that review, GM advised Mall that it had identified $114,178.60 in charges that had been submitted for reimbursement and that deviated from the standards for reimbursement set forth in GM's policies. (5/19/17 Ltr., Stip. Facts Ex. D, at 1-2.) GM further advised Mall that a debit would be processed in that amount against Mall's account. (Id. at 2.) To substantiate the proposed chargeback, GM provided Mall with a detailed spreadsheet, listing the specific charges that Mall had submitted that GM had identified as deviating from its policies and providing explanations of the precise deviation that was identified with respect to each charge. (5/19/17 Spreadsheet, Jeremy A. Cohen Decl. ("Cohen Decl."), ECF No. 85-1, Ex. 14.) Among the deviations listed were: the diagnostic codes provided could not have been generated by the make or model of the car allegedly repaired, there was no customer signature and no reason stated for why it was missing, and there were different mileages reported in different places for the same car. (See, e.g, id. at 4, 6, 11 of 45.)

On July 5, 2017, GM advised Mall that it had been selected for an on-site audit to review Mall's administration of GM's policies and procedures, including the dealership's practices with regard to warranty claims. (Stip. Facts ¶ 20 and Ex. H.) The on-site audit began on July 31, 2017, and the auditors looked at Mall's documentation for warranty repairs between August 2, 2016 and July 14, 2017. (Id. ¶¶ 22, 24.) The auditors ultimately prepared a 94-page Debit Deviation Report

that identified more than 400 repair orders that contained 517 deviations from procedures required by the Service Manual. (Id. Ex. L.)

On May 3, 2018, GM issued a Notice of Breach, which enclosed both the Debit Deviation Report and an Audit Summary Report. (Stip. Facts ¶¶ 28-29 and Ex. L.) The Audit Summary Report stated that, based on the audit, GM proposed a chargeback of $672,176.59 for warranty claims that it deemed unsubstantiated. (Stip. Facts Ex. L, at 5 of 99.) The Notice of Breach stated that GM had "found multiple submissions where the documentation either did not support the warranty claim or actually reflected fraud." (Id. at 3 of 99.) Noting that the Dealer Agreement gave it the power to terminate the Agreement if it learned that Mall had submitted false claims for payment, GM advised Mall that it had 30 days to submit documentation to clear the identified deviations. (Id. at 2, 4 of 99; Stip. Facts ¶ 28.) It also stated that, if Mall did not submit documentation that cleared the deviations, the chargebacks would become final. (Stip. Facts. Ex. L at 2 of 99.)

On May 31, 2018, Mall responded to the Notice of Breach with documentation as well as assertions that there were no fraudulent or false claims and that GM had presented no evidence of fraud. (5/31/2018 Ltr. Resp. to Notice of Breach, Stip. Facts Ex. M, at 2-3 of 4.) Thereafter, GM issued a Notice of Termination, observing that there were "extensive irregularities in Mall's claims for warranty reimbursement," and stating that its auditors had found the documents that Mall had submitted to be "insufficient to clear the vast majority of the deviations." (Notice of Term., Stip. Facts Ex. O, at 2, 4 of 12.) GM stated that the supplemental submission "cleared only 12 deviations for a total of $16,143.55" and that it therefore intended to process a revised debit of $656,033.04. (Id. at 4, 6 of 12.) Ultimately, based on its determination that Mall had failed to substantially comply with GM's procedures, submitted false claims for payment for warranty work, and

provided a deficient response to the Notice of Breach, GM advised Mall that it was terminating the Dealer Agreement, effective October 1, 2018.  (Id. at 5 of 12.)

The instant lawsuit followed.  Mall asserted claims under the NJFPA, including a claim for unlawful termination pursuant to N.J. Stat. Ann. § 56:10-5 (Count I) and a claim for unlawful chargebacks pursuant to N.J. Stat. Ann. § 56:10-15(f) (Count V), as well as claims for breach of contract.  After extensive discovery, Mall filed a "Motion for Partial Summary Judgment as to the Unlawful Chargebacks Asserted against Mall (Count V)," the parties filed cross-motions for summary judgment as to Count I, and GM moved for summary judgment in its favor on the remaining counts  (Counts II, III, VI, and VII).

In Mall's motion for summary judgment as to the unlawful chargebacks claim in Count V, Mall argued that the undisputed record evidence established that all of GM's chargebacks were invalid because the 500-plus deviations that GM identified were all illegitimate.  We denied that Motion in an Order dated September 3, 2020, finding that there were genuine disputes of material fact that prevented us from entering summary judgment in Mall's favor.

Thereafter, in a February 8, 2021 Memorandum and Order, we granted GM's motion for summary judgment on Counts I, II, III, VI, and VII of Mall's Complaint, and we ordered that a non-jury trial proceed on Count V only.  Mall Chevrolet, Inc. v. Gen. Motors LLC, Civ. A. No. 18-15077-JRP-KMW, 2021 WL 426193, at *19 (D.N.J. Feb. 8, 2021).  In connection with Count I, Mall's unlawful termination claim, we specifically found that the undisputed record evidence demonstrated that Mall had submitted upwards of 100 false warranty claims for vehicles that were not present at its facility and that the submission of such claims constituted a material breach of the Dealer Agreement.  Id. at *12.

Following our issuance of the February 8, 2021 Memorandum and Order, GM filed a Motion for Leave to File a Motion for Summary Judgment on Count Five, seeking to raise its defense under § 56:10-9 of the NJFPA in a summary judgment motion filed after the dispositive motion deadline. We granted that Motion on April 15, 2021.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment may be entered if the nonmoving party fails to respond with a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

GM moves for summary judgment in its favor on Count V of the Complaint, arguing that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law pursuant to § 56:10-9 of the NJFPA. Section 56:10-9 provides: "It shall be a defense for a franchisor, to any action brought under this act by a franchisee, . . . that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral

thereto." N.J. Stat. Ann. § 56:10-9. Here, as noted above, we concluded in our February 8, 2021 Memorandum that Mall had materially breached the parties' Dealer Agreement by seeking and collecting payment from GM for warranty repairs to cars that were never present at its service facility. Mall Chevrolet, 2021 WL 426193, at *12. In light of this material breach, GM argues that § 56:10-9 prohibits Mall from pursuing its NJFPA claim in Count V for unlawful chargebacks.

In Coast Automotive Group, LTD v. VW Credit, Inc., the United States Court of Appeals for the Third Circuit stated that "[g]iving [§ 56:10-9's] terms their normal meaning," the section "provides a **complete defense** to a franchisor in 'any action' brought under the NJFPA where the franchisee has itself committed a material breach of the franchise agreement." 119 F. App'x 419, 423 (3d Cir. 2005) (emphasis added); see also Gen. Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 320 n.11 (3d Cir. 2001) ("Section 56:10–9 allows a franchisee's substantial noncompliance to serve as a complete defense in 'any action' instituted under the NJFPA by a franchisee." (citing N.J. Stat. Ann. § 56:10–9)). In spite of § 56:10-9's clear language, Mall argues that we should not apply the defense to its unlawful chargeback claim in Count V because no court has previously applied the defense to such a claim, application of the defense would "render useless" § 56:10-15(f)'s protection against unlawful chargebacks, and GM waived its § 56:10-9 defense by failing to raise it in its Answer to Mall's Complaint.

First, the fact that no court has previously applied § 56:10-9 to an unlawful chargebacks claim does not preclude us from applying it here. In Coast Automotive, the Third Circuit addressed for the first time the question of whether the defense could be applied to an unreasonable performance standards claim under NJFPA § 56:10-7(e) and stated that, to resolve that issue, it was required to address the "open question of state law" by "look[ing] to the fundamental principles of statutory construction that would inform the New Jersey court's consideration of the

issue." 119 F. App'x at 423.   In that regard, it noted that "New Jersey abides by well-known rules of statutory construction," which provide that "when a statute is clear and unambiguous on its face, 'the sole function of the courts is to enforce it according to its terms.'"   <u>Id.</u> (quoting <u>Velazquez v. Jiminez</u>, 798 A.2d 51, 61 (N.J. 2002)).   Applying that principle here, we can only conclude, as did the court in <u>Coast Automotive</u>, that the "normal meaning" of § 56:10-9's terms provides "no support for [a] contention that the statutory defense does not apply to actions brought under [the provision at issue]," i.e., § 56:10-7(e) in <u>Coast Automotive</u> and § 56:10-15(f) here.   <u>Id.</u>   Rather, by its plain terms, the provision applies to "'any [NJFPA] action'" where the franchisee has materially breached the franchise agreement.  <u>Id.</u>; <u>see also</u> <u>Kumon N. Am., Inc. v. Timban</u>, Civ. A. No. 13–4809, 2014 WL 2812122, at *6 (D.N.J. June 23, 2014) (applying § 56:10-9 to failure to approve transfer claim pursuant to NJFPA § 56:10-6); <u>Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp., Ltd.</u>, Civ. A. No. 99-3121, 2006 WL 2830962, at *8 (D.N.J. Sept. 29, 2006) (stating that the "absolute defense" in § 56:10-9 "should be read to preclude any claim under the Act alleging bad faith when it has been demonstrated that the franchisee substantially failed to comply with the agreement").   Moreover, as the Third Circuit recognized, this plain meaning is entirely "consistent with the NJFPA's stated legislative policy of regulating the responsibilities of both the franchisee and the franchisor" as well as the "legislative desire to protect '<u>innocent</u> franchisee[s],'" not those who are in material breach of their franchise agreements.  <u>Coast Auto. Grp.</u>, 119 F. App'x at 423 (emphasis added) (quoting <u>Westfield Centre Serv., Inc. v. Cities Serv. Oil Co.</u>, 432 A.2d 48, 55 (N.J. 1981)); <u>see also</u> <u>Goldsworthy v. Browndorf</u>, 2011 WL 3687401, at *4 (N.J. Super. Ct. App. Div. Aug. 24, 2011) (quoting <u>Westfield</u>, 432 A.2d at 55).

We also reject Mall's argument that application of § 56:10-9 would "render useless" the requirements imposed on franchisors under § 56:10-15(f), which states that a franchisor may not

charge back a previously-approved and paid warranty claim unless it can establish one of four prerequisites: that (1) "the claim was false or fraudulent," (2) "the services were not properly performed," (3) "the parts or services were unnecessary to correct the defective condition," or (4) the "franchisee failed to reasonably substantiate the claim in accordance with reasonable written requirements of the . . . franchisor." N.J. Stat. Ann. § 56:10-15(f). There is no question that when a franchisee has complied with the "requirements imposed by the franchise and other agreements ancillary or collateral thereto," § 56:10-9 does not interfere with its ability to take full advantage of the protections in § 56:10-15(f). N.J. Stat. Ann. § 56:10-9; Coast Auto. Grp., 119 F. App'x at 423 (emphasizing that § 56:10-9 "does not protect the franchisor from suit brought . . . by an 'innocent franchisee'"). It is only when a franchisee like Mall has materially breached the franchise requirements—and thus is not "innocent"—that the New Jersey legislature does not offer the franchisee those special statutory protections. Mall contends that permitting § 56:10-9 to bar claims under § 56:10-15(f) "allow[s] a franchisor, such as GM, to manufacture . . . $656,033.04 . . . in illegitimate chargebacks[,] . . . issue a notice of termination, and reap the benefits of the . . . illegitimate chargebacks, without the challenged chargebacks ever being tested and resolved." (Mall's Mem. at 30.) However, in this case, we have already determined that many of GM's challenged chargebacks were legitimate, because we found that the undisputed evidence demonstrated that Mall had submitted numerous false warranty repair claims for cars that were never present on its lot. See Mall Chevrolet, 2021 WL 426193, at *12. Thus, Mall's hypothetical, which presupposes a franchisor who asserts no legitimate chargebacks, is simply not implicated in this case. And although Mall correctly observes that we have not yet determined the legitimacy or illegitimacy of many of GM's chargebacks on the existing summary judgment record, the fact remains that the statute dictates that, by submitting fraudulent warranty claims in material breach

of the Dealer Agreement, Mall has forfeited its right to assert a statutory unlawful chargebacks claim to test the legitimacy of the remaining chargebacks.

Finally, Mall contends that GM waived its § 56:10-9 defense because it did not assert that statutory provision as an affirmative defense in its Answer to the Complaint. Federal Rule of Civil Procedure 8(c)(1) requires a defendant to plead all of its affirmative defenses in its answer. "The purpose of [this requirement] is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." Robinson v. Johnson, 313 F.3d 128, 134-35 (3d Cir. 2002) (citations omitted). Thus, "a 'defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'" Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991) (quoting Lucas v. United States, 807 F.2d 414, 418 (5th Cir. 1986) (alterations in original)). A determination of whether an affirmative defense has been waived is a matter of discretion for the district court. In re Frescati Shipping Co., Ltd., 886 F.3d 291, 313 (3d Cir. 2018) (citation omitted), aff'd sub nom. CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd., 140 S. Ct. 1081 (2020).

Here, GM asserted as its second affirmative defense in its Answer that "Mall's claims are barred, in whole or in part, by its own breach of the Dealer Agreement." (GM's Answer, ECF No. 9, at 17.) While Mall maintains that this did not give it sufficient notice that GM would rely on § 56:10-9 to defend Mall's NFJPA claims, it cannot dispute that it was well aware that GM was defending against Mall's claims by asserting, inter alia, that Mall had breached the Dealer Agreement. In fact, Mall's alleged breaches of the Dealer Agreement were one of the focusses of discovery as those breaches were GM's primary defense to Mall's unlawful termination claim in Count I of Mall's Complaint. We therefore conclude that Mall was not prejudiced by GM's failure

to cite to § 56:10-9 earlier in the litigation because Mall was alerted as to the substance of that defense in GM's Answer and was in no way hampered in its ability to defend against it. Accordingly, we exercise our discretion to conclude that GM did not waive its § 56:10-9 defense in this case.

## II.	CONCLUSION

For all of the above reasons, we conclude that Mall's unlawful chargebacks claim is barred by § 56:10-9.  We therefore grant GM's Motion for Summary Judgment on Count V and enter judgment in favor of GM and against Mall on Count V.  Furthermore, because we previously entered judgment in GM's favor on Count I, II, III, VI and VII in our February 8, 2021 Memorandum and Order, we now enter final judgment in this case in favor of GM and against Mall, and we direct the Clerk to close the case.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____
John R. Padova, J.